Gioacchino (Jack) GIAMPAPA,
Petitioner,

v.

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,
Respondent.

No. 00SC468.

Supreme Court of Colorado,
En Banc.

Feb. 24, 2003.

Walter H. Sargent, P.C. Walter H. Sargent, Colorado Springs, Colorado, Attorney for Petitioner.

Harris, Karstaedt, Jamison & Powers, P.C., A. Peter Gregory, Englewood, Colorado, Attorney for Respondent.

William Imig, Denver, Colorado, Amicus Curiae for National Association of Independent Insurers.

Patterson, Nuss & Seymour, P.C., Franklin D. Patterson, Brian C. Proffitt, Englewood, Colorado, Amicus Curiae for Colorado Defense Lawyers Association.

Collison & Bechtold, LLC, Joan M. Bechtold, Denver, Colorado, Amicus Curiae Plaintiffs Employment Lawyers Association.

Bradley A. Levin, Christine K. Biretta, Denver, Colorado, Amicus Curiae by The Colorado Trial Lawyers Association.

Chief Justice MULLARKEY delivered the Opinion of the Court.

## I. INTRODUCTION

This case clarifies the availability of noneconomic damages when an insurer has will-

fully and wantonly breached its insurance contract.

■ When an insurer has wrongfully refused to pay benefits to an insured, the insured may, under certain circumstances, seek remedies under contract law, tort law, and the Colorado Auto Accident Reparations Act ("No Fault Act" or "Act"). §§ 10–4–701 et seq., 3 C.R.S. (2002). In this case, Gioacchino (Jack) Giampapa filed all three types of actions against the American Family Mutual Insurance Company and a jury awarded Giampapa damages under all claims. Under the contract claim specifically, the jury awarded Giampapa $900,000 in economic and non-economic "special damages" for American Family's willful-and-wanton breach of contract. This award did not duplicate any of Giampapa's tort or statutory damages. On appeal today is the issue of whether Giampapa may recover complete non-economic damages under his common law contract claim.

We hold that a complete range of non-economic damages is available when an insurer has willfully and wantonly breached its contract with an insured, so long as the damages are foreseeable at the time of contracting and the damages are a natural and probable result of the breach. We begin our discussion with a summary of the underlying facts of this case and an explanation of its complex procedural history. Next, we address the threshold issue of whether a common law contract claim can coexist with a statutory claim under the No Fault Act, and conclude that the No Fault Act does not preempt a contract claim. We then address contract claims specifically, explaining (1) the background of Colorado's existing "willful-and-wanton" rule; (2) why we retain the rule today; and (3) why the scope of the rule allows an insured to recover complete non-economic damages not limited to "mental anguish." Finally, we apply Colorado's willful-and-wanton rule to Giampapa and find that (1) the "law of the case doctrine" is inapplicable here; (2) his case satisfies the elements of the willful-and-wanton rule; and (3) the full $900,000 award stands because American Family has waived its section 13–21–102.5(3)(a), 5 C.R.S. (2001), statutory cap

argument. Accordingly, we reverse the judgment of the court of appeals and reinstate Giampapa's original special damages award in its entirety.

## II. FACTS AND PROCEDURAL HISTORY

In 1992, a vehicle traveling at 35–45 miles per hour rear-ended Giampapa while he was stopped at a stop sign. After the initial impact, a second vehicle crashed into the first vehicle, causing another collision. Giampapa suffered numerous serious injuries, including spinal fractures, head and neck injuries, torn knee cartilage, and severe numbness in his arms and legs.

At the time of the accident, the defendant American Family Mutual Insurance Company ("American Family") was Giampapa's automobile insurance carrier. Giampapa was covered under a "deluxe" insurance plan, for which he paid a higher premium and which provided additional benefits beyond the basic personal injury protection ("PIP") coverage required by the No Fault Act. Namely, American Family agreed to pay for medical care provider bills and for reasonable and necessary durable medical equipment.

Following the accident, Giampapa began a physical therapy regimen that included hydrotherapy, treadmill walking, and strengthening exercises. Giampapa's physicians believe that he probably will need to continue this physical therapy for the rest of his life. On his physicians' advice, Giampapa attended these physical therapy sessions three to five times a week and had to drive approximately sixty miles, round trip, to attend each of these sessions.

Soon, the strain of this frequent and time-consuming drive began to substantially aggravate his condition and to negate the positive effects of the therapy. In light of these circumstances, Giampapa's physicians concluded that he would be better off with a treadmill and weight machine for home use. Such home equipment would allow Giampapa to continue physical therapy without having to make the strenuous drive, thus his therapy would be more effective. His physicians also prescribed a special therapeutic chair that

would allow him to sit without great pain, and a hot tub that had been effective in both improving his condition and alleviating his constant pain.

American Family was advised of the medical opinion that this home medical equipment was necessary to help Giampapa recover from his injuries, but American Family repeatedly refused to pay for such items. Furthermore, in addition to refusing to pay for the medical equipment, American Family failed to pay some of Giampapa's medical care provider bills and paid other bills months late. As a result, Giampapa received numerous collection notices from his medical providers about his failure to pay for their services.

All of these events had a devastating impact on Giampapa's life. Because of American Family's failure to pay the above benefits, Giampapa was required to continue his sixty-mile drives to his physical therapy sessions, three to five times a week. He consumed large amounts of pain medications to offset the diminished effectiveness of his physical therapy, and he endured substantial side effects from these medications. His personal relationships with his family degenerated as he became increasingly irritable and withdrawn, and his condition eventually forced him to shut down his business.

Giampapa ultimately filed suit against American Family for failing to make timely medical provider payments and for failing to pay for reasonable and necessary medical equipment. Giampapa argued that American Family's actions constituted a common law breach of contract, a statutory violation of the No Fault Act, and a tortious bad faith breach of contract. A jury trial found for Giampapa on all claims.

Under the contract action, the jury found that American Family had willfully and wantonly breached its contract with Giampapa by failing to pay for $10,574.59 worth of reasonable and necessary durable medical equipment, causing him to suffer an additional $900,000 in special damages. Furthermore, the jury found that American Family had willfully and wantonly failed to pay $9,336.74 in medical care provider bills in a timely fashion.

Because the jury found that American Family's conduct was willful and wanton, the trial court, pursuant to section 10–4–708(1.8) of the No Fault Act, 3 C.R.S. (2001), trebled "the amount of unpaid benefits recovered in the proceeding." Specifically, the trial court awarded Giampapa three times the amount of the actual value of the medical equipment and three times the amount of the actual value of unpaid medical care provider bills.

Finally, under the tort action, the jury found that American Family had breached the insurance contract in tortious bad faith, entitling Giampapa to $100,000 in economic damages and $200,000 in non-economic damages. Neither amount duplicated the special damages under the contract claim. The jury also determined that American Family's breach was willful and wanton beyond a reasonable doubt, thus warranting punitive damages in the amount of $300,000.

After the trial court issued its order, this case began a long and convoluted journey through an appeal, a limited retrial, and a second appeal. We now summarize this complex procedural history.

■ First, American Family appealed the $900,000 special damages award on the basis that the No Fault Act is the exclusive remedy for an insurer's willful-and-wanton breach of an automobile insurance contract. The court of appeals rejected this argument, allowing Giampapa to recover special damages under common law contract principles. *Giampapa v. American Family Mut. Ins. Co.*, 919 P.2d 838, 840–41 (Colo.App.1995) ["*Giampapa I*"]. However, the court of appeals also held, sua sponte, that its holding in *Decker v. Browning–Ferris Indus. of Colo., Inc.*, 903 P.2d 1150 (Colo.App.1995) ["*Thomas Decker I*"], limited the recovery of non-economic special damages to "mental anguish" caused by the willful-and-wanton breach of contract. *Giampapa I*, 919 P.2d at 841. Giampapa's $900,000 special damages award had included not only lost earnings and mental anguish, but also physical pain, impairment of earning capacity, and impairment of quality of life. Therefore, based on *Thomas Decker I*, the court vacated the $900,000 award and remanded the case for a

limited new trial to determine damages on the segregated issue of lost earnings and mental anguish.[1]

This court denied cross-petitions for certiorari review of *Giampapa I. American Family Mut. Ins. Co. v. Giampapa*, No. 96SC43, 1996 Colo. LEXIS 203 (Colo. June 17, 1996).

At retrial, the jury awarded Giampapa $125,000 on the sole issue of mental anguish. The trial court reduced this award to $50,000 pursuant to section 13–21–102.5(3)(a), 5 C.R.S. (2001), which generally limits total non-economic damages in civil suits to $250,000.[2] Under this provision, only "justification by clear and convincing evidence" warrants a greater award of non-economic damages, up to a maximum of $500,000. *Id.* The trial court agreed that Giampapa had indeed suffered the damages determined by the jury, but still chose not to pierce the $250,000 cap because Giampapa's damages were aggravated by his unusual physical and psychological condition.

Meanwhile, we reversed *Thomas Decker I* in the case of *Decker v. Browning–Ferris Indus. of Colo., Inc.*, 931 P.2d 436 (Colo.1997) ["*Thomas Decker II*"]. In *Thomas Decker II*, we agreed that "mental suffering" was recoverable for a willful-and-wanton breach of contract, but held that the jury's non-economic award for "inconvenience and emotional stress" was also proper under Colorado law. 931 P.2d at 448. Our decision in *Thomas Decker II* set the stage for the second appeal of the *Giampapa* case.

In the second appeal, Giampapa was the party seeking relief from the court of appeals. Giampapa argued for reinstatement of his original $900,000 special damages award in light of our *Thomas Decker II* decision. At this stage, the court of appeals declined to reconsider *Giampapa I*, believing the law had not changed because the court considered "inconvenience and emotional distress" to be mere subsets of "mental suffer-

ing." *Giampapa v. Am. Family Mut. Ins. Co.*, 12 P.3d 839, 841 (Colo.App.2000) ["*Giampapa II*"]. The court then remanded the narrower issue of Giampapa's reduced $50,000 mental anguish award back to the trial court, stating that the trial court had erroneously considered Giampapa's unusual physical and psychological condition when deciding whether or not to award damages exceeding the $250,000 non-economic damages cap. *Id.*

We granted certiorari to determine whether the court of appeals properly refused to reconsider *Giampapa I* in light of our *Thomas Decker II* decision regarding non-economic damages for a willful-and-wanton breach of contract. We also, sua sponte, requested briefing from the parties on the issues of whether the longstanding willful-and-wanton rule should stand and, if so, whether complete non-economic damages—not limited to "mental anguish"—are available for a willful-and-wanton breach.

We answer the above questions in the following order of analysis: First, we address the threshold issue of whether a common law contract claim can coexist with a No Fault Act claim when an insurer has wrongfully refused to pay insurance benefits. Second, we address the availability of non-economic damages in contract cases under Colorado's willful-and-wanton rule. Third, we apply Colorado's willful-and-wanton rule to Giampapa and find it proper to reinstate his original special damages award in its entirety.

## III. ANALYSIS

### A. The No Fault Act Does Not Preempt Common Law Contract Remedies

■ At the outset, we affirm the *Giampapa I* holding that the No Fault Act does not abrogate a common law contract claim when an insurer wrongfully refuses to pay insurance benefits. Because the No Fault Act is

---

1. Giampapa did not pursue lost earnings during the retrial. Also, the court of appeals in *Giampapa I* erroneously categorized "impairment of earning capacity" as a type of non-economic injury. As we indicated in *Decker v. Browning–Ferris Indus. of Colo., Inc.*, 931 P.2d 436, 447 (Colo.1997), loss of future pay is an economic injury. *See also* CJI–Civ. 4th 6:1 (economic loss

includes "damage to ... ability to earn money in the future").

2. The jury at the original trial had already awarded Giampapa $200,000 in non-economic damages under his tort claim.

not an exclusive remedy, Giampapa's contract claim against American Family is viable.

■ American Family argues that the "willful-and-wanton" provision of the No Fault Act signifies the legislature's intent to statutorily abrogate common law contract remedies for an insurer's willful-and-wanton breach of an automobile contract. American Family thus proposes that Giampapa cannot recover any special damages under common law contract principles because his damages are limited to the statutory formula trebling his general damages.[3] We reject American Family's contention. The No Fault Act contains no express legislative intent to preempt common law contract remedies, and to imply such intent would frustrate the primary purpose of the Act.

■ When construing a statute, our task is to give effect to the intent of the General Assembly. *State v. Nieto,* 993 P.2d 493, 500 (Colo.2000); *People v. Dist. Court,* 713 P.2d 918, 921 (Colo.1986). Although the Colorado legislature has the power to expressly abrogate common law remedies via statute, we will not infer such an intent unless it is clearly expressed in the law, either directly or by necessary implication. *See Kristensen v. Jones,* 195 Colo. 122, 124, 575 P.2d 854, 855 (1978); *Collard v. Hohnstein,* 64 Colo. 478, 479, 174 P. 596 (1918). Therefore, a mere overlap of statutory and common law claims does not preempt the common law claim.

Section 10–4–708(1.8) of the No Fault Act explicitly states that when an insurer's failure to pay benefits is willful and wanton,[4] the insured will receive "an amount which is three times the amount of unpaid benefits recovered." Aside from this trebled general damage award arising from unpaid benefits,

the Act includes no other remedy for the breach; the Act is silent regarding the availability of economic or non-economic special damages. In interpreting the Act's silence, we are reminded that "we do not look to whether the legislature specifically authorizes the continuance of preexisting common-law remedies ... but rather to whether, 'in express terms or by clear implication, [the statute] repeals or suspends the common-law right of action.'" *Farmers Group, Inc. v. Williams,* 805 P.2d 419, 426 (Colo.1991) (citing *Denver & Rio Grande R.R. Co. v. Henderson,* 10 Colo. 1, 2, 13 P. 910, 911 (1887)).

We find no such express or implied repeal or suspension here. First, this court has previously examined the language and the legislative history of the No Fault Act in detail, finding absolutely no evidence that the General Assembly abrogated common law remedies. *Williams,* 805 P.2d at 424. In *Williams,* these findings led us to conclude that the No Fault Act does not abrogate a common law bad faith tort claim. *Id.* at 424–25. In our *Williams* analysis, we explained the context of the legislature's silence, finding that "[c]ase law existed in 1973 to guide the General Assembly in limiting common-law remedies against insurance companies if that result was intended." *Id.* at 425 (citing *Fitzsimmons v. Olinger Mortuary Ass'n,* 91 Colo. 544, 17 P.2d 535 (1932) (a common law contract case allowing non-economic mental suffering damages for a willful-and-wanton breach)).

The General Assembly placed no limits on common law remedies when it first enacted the No Fault Act in 1973, and it has placed no limits on common law contract remedies in the No Fault Act in the eleven years since we decided *Williams.* Surely, almost thirty

---

**3.** "General damages" are those that flow naturally from the breach of contract, whereas "special" or "consequential damages" are other foreseeable damages within the reasonable contemplation of the parties at the time the contract was made. *See, e.g.,* 3 Dan B. Dobbs, *Law of Remedies* § 12.2(3), 39–43 (2d ed.1993). In this case, general damages are the actual value of unpaid medical provider bills and medical equipment, and special damages include economic and non-economic losses such as lost earnings, mental anguish, impairment of quality of life, etc.

**4.** The Act itself does not define "willful-and-wanton," but we have previously stated that in the insurance context, a willful-and-wanton breach under the Act is established when "an insurer acts without justification or in disregard of a plaintiff's rights." *Dale v. Guaranty Nat'l Ins. Co.,* 948 P.2d 545, 551 (Colo.1997); *Burgess v. Mid–Century Ins. Co.,* 841 P.2d 325, 329 (Colo. App.1992).

years of legislative silence evidences agreement with our interpretation of the law.

Second, we also find no implicit legislative intent to preempt common law contract claims; to the contrary, extinguishing such remedies would frustrate the essential purpose of the No Fault Act. The primary purpose of the Act is "to avoid inadequate compensation to victims of automobile accidents." § 10–4–702, 3 C.R.S. (2002); *see also Adams v. Farmers Ins. Group*, 983 P.2d 797, 803 (Colo.1999) (when interpreting the Act, courts should use a "liberal construction of its provisions in favor of insureds"). Not all damages are covered by the statute.

Furthermore, regarding section 10–4–708(1.8) specifically, we have stated that the purpose of the treble damages remedy is that it "functions as a PIP coverage enforcement mechanism ... for the benefit of those wrongfully denied the mandatory statutory coverage." *Mid–Century Ins. Co. v. Travelers Indem. Co.*, 982 P.2d 310, 314–315 (Colo. 1999).[5] Thus, the treble damages provision functions primarily as a statutory penalty or an enforcement mechanism, not as a complete remedial measure. It gives the insured a modest incentive to seek a legal remedy for lost benefits.

The trial court in *Giampapa I* aptly described the inadequacy of trebled "unpaid benefits" as a remedy by using an example where the "unpaid benefit" is a basic wheelchair. The court first observed that special damages would be "obvious and predictable" if an insurer refused to pay for an insured's necessary wheelchair. The court then concluded that it "[did] not believe that the legislature intended to limit breach of contract recovery to three times the value of a wheelchair when an insurance company's unreasonable failure to pay for a wheelchair renders a capable worker unable to maintain employment or to be reasonably self-sufficient." We agree that three times the price of an "unpaid benefit" does not ensure adequate compensation for a willful-and-wanton breach resulting in lost wages, impairment of

earning capacity, physical pain, mental anguish, impairment of quality of life, and other foreseeable special damages. Therefore, we conclude that the legislature did not intend to limit an insured's remedies to the statutory remedy alone.

■ Unlike the No Fault Act, which speaks only of general damages and is silent on special damages, common law contract principles have long provided both general and special damages for a breach of contract. *See, e.g., Westesen v. Olathe State Bank*, 78 Colo. 217, 219, 240 P. 689, 690 (1925); John D. Calamari & Joseph M. Perillo, *The Law of Contracts* § 14–5(a), at 595 (3d ed.1987); 3 Dobbs, *supra* note 3, § 12.2(3), at 38. Therefore, we adhere to our long-established position that the legislature intended the No Fault Act to coexist with common law provisions, allowing insureds to recover special damages under a common law contract claim so long as no damages are duplicative.

### B. Non-economic Damages in Contract Cases: Colorado's Willful–and–Wanton Rule

■ Having concluded that a common law contract claim is viable when an insurer fails to pay benefits, we now turn to the more specific question of when and to what extent non-economic damages are available in a contract claim in the insurance context. We hold today that in Colorado, a complete range of non-economic damages is available when an insurer has willfully and wantonly breached its contract with an insured, so long as the damages are foreseeable at the time of contracting and the damages are a natural and probable result of the breach. *See also Thomas Decker II*, 931 P.2d at 448; *Trimble v. City of Denver*, 697 P.2d 716, 731 (Colo. 1985).

■ To better understand the elements and scope of Colorado's "willful-and-wanton" rule, we begin our analysis with a brief summary of the rule's background. Next, we

5. We take note that Giampapa contracted and paid for a "deluxe" PIP plan that provided benefits for medical care provider bills and medical equipment not required by the basic mandatory PIP coverage set forth by section 10–4–706, 3

C.R.S. (2002). For purposes of this case, we do not distinguish between mandatory and supplemental benefits because we believe a common law contract remedy is available for a willful-and-wanton breach in either case.

explain why we retain the longstanding rule. Finally, we explicitly define the scope of available non-economic damages in contract actions.

### 1. Background of the Willful-and-Wanton Rule

Colorado's willful-and-wanton rule dates back to the early twentieth century, when the court of appeals first held that mental distress damages alone, meaning mental distress damages unaccompanied by physical or pecuniary loss, are available when a promisor's breach is accompanied by "willful, insulting or wanton conduct." *Hall v. Jackson,* 24 Colo.App. 225, 228, 134 P. 151, 152 (1913). This court later approved the willful-and-wanton rule in *Fitzsimmons,* 91 Colo. at 550, 17 P.2d at 537, and defined a willful-and-wanton breach as being "intentional, and without legal justification or excuse." [6] *McCreery v. Miller's Groceteria Co.,* 99 Colo. 499, 503, 64 P.2d 803, 805 (1936). After *McCreery,* no Colorado court discussed non-economic damages in contract cases for almost fifty years.

Then, in the 1980s, we reaffirmed the rule that mental suffering damages are available if they result from a willful-and-wanton breach. *Trimble,* 697 P.2d at 731.[7] *Trimble* was an employment contract case in which a hospital supervisor sought to "get rid" of Dr. Trimble, a "very respected" physician, after a conflict developed between the two men. *Id.* at 720-21. The trial court found that the supervisor maliciously demoted Dr. Trimble through unauthorized and improper methods: the supervisor intentionally reorganized the hospital's departments to abolish Dr. Trimble's position, assigned Dr. Trimble to an office in a maintenance building known as the "boiler house," and later breached a settlement agreement intended to restore Dr. Trimble's reputation. *Id.* at 720-21. Faced with these facts, the *Trimble* court reaffirmed the rule that a plaintiff can recover non-pecuniary damages for a willful-and-wanton breach of contract. *Id.* at 731.

Ten years after *Trimble,* in 1995, the court of appeals in *Thomas Decker I* interpreted the willful-and-wanton rule with a new twist. Perhaps focusing on prior cases off-handedly stating that mental damages "alone" may be recovered for a willful-and-wanton breach, the court held that a promisee could not recover other non-economic damages in addition to mental damages, such as damages for inconvenience or emotional stress. *Thomas Decker I,* 903 P.2d at 1158. We later reversed *Thomas Decker I* in *Thomas Decker II,* holding that other non-economic damages such as inconvenience and emotional stress are in fact available for a willful-and-wanton breach. *Thomas Decker II,* 931 P.2d at 448. As mentioned above in the procedural history portion of this opinion, the court of appeals relied on its *Thomas Decker I* holding when it reversed Giampapa's original $900,000 special damages award.

### 2. Continuing Validity of the Willful-and-Wanton Rule

In this appeal, we requested briefing from the parties on the issue of whether Colorado's longstanding willful-and-wanton rule should stand. Stare decisis binds us to the pre-existing rule unless we are clearly convinced that (1) the rule was originally erroneous or is no longer sound due to changing conditions and (2) more good than harm will come from departing from precedent. *People v. Blehm,* 983 P.2d 779, 788 (Colo.1999). Because we are not clearly con-

---

**6.** We have never considered whether the definition of "willful-and-wanton" under the No Fault Act covers the same "willful-and-wanton" behavior defined under common law contract principles. We need not reach the issue here because the trial court instructions did not use either definition.

**7.** *Trimble* also suggested that an exception to the willful-and-wanton rule exists where the contract is "of such a personal and special nature that the parties knew, or should have known, that a breach would result in severe mental or emotional distress." *Trimble,* 697 P.2d at 731-32 (citing *Westesen,* 78 Colo. at 220, 240 P. at 691). We do not recognize this as a separate exception to the willful-and-wanton requirement because it departs from the longstanding rule that mental anguish damages are not recoverable in cases where a mere passive breach is unaccompanied by wanton, willful, or insulting acts. *Fitzsimmons,* 91 Colo. at 550, 17 P.2d at 537; *Hall,* 24 Colo.App. at 228, 134 P. at 152.

vinced that the above tests are met, we reaffirm the willful-and-wanton rule.

First, the willful-and-wanton rule was not erroneous when it was adopted. From the beginning, the rule has adhered to basic contract law principles. All contract damages, whether general or special, economic or non-economic, are recoverable only if the damages were the foreseeable result of a breach at the time the contract was made. *See, e.g.,* Restatement (Second) of Contracts, §§ 351 & 352 (1981). A foreseeability requirement is inherent in every contract case because contractual liability is determined by whether such liability was within the contemplation of the parties at the time of contracting. *See id.; Hadley v. Baxendale,* 9 Ex. 341, 156 Eng. Rep. 145 (1854). In Colorado, the standard jury instruction on special damages in contract cases properly reflects this emphasis on foreseeability, instructing the jury that it must find, "*at the time the parties entered into the contract,* the defendant reasonably could have anticipated from the facts or circumstances that the defendant knew or should have known that these damages would probably be incurred by the plaintiff if (he)(she), the defendant, breached the contract." C.J.I. 30:35 (emphasis added).[8]

Under the willful-and-wanton rule, the allowance of non-economic damages in contract claims does not dispose of expectation interests. To the contrary, the rule properly limits the availability of non-economic damages to extraordinary contractual circumstances where such damages are in fact foreseeable at the time of contracting. In typical commercial contracts where goods are exchanged for money, non-economic damages are not foreseeable because only pecuniary loss is at stake. *See Adams,* 691 P.2d at 355 (mental anguish resulting solely from pecuniary loss following a breach of contract is not recoverable); *see also* 3 Dobbs, *supra* note 3, § 12.4, at 819. Because the parties in an ordinary sales situation do not contemplate non-economic harm at the time of contracting, a willfully breaching party is not responsible for non-economic damages.

In contrast, serious non-economic harm may be foreseeable when the contract is of a more personal nature.[9] In particular, when an insured pays an automobile insurance carrier for medical coverage in the event of an injury accident, the insured is also paying for the peace of mind and security that inherently accompanies that insurance coverage.[10] For such cases, it is plainly foreseeable at the time of contracting that if the insurer later decides to intentionally and wrongfully abandon its agreement after the insured is seriously injured in a debilitating automobile accident, physical pain and mental anguish will be probable results of the breach. Under these circumstances, it is within the clear contemplation of both parties that a breach will cause damages beyond those caused by mere economic loss. If these foreseeable non-economic damages are proven with reasonable certainty and the insurer's conduct is in fact willful and wanton, the breaching insurer will be held liable for those damages. This conclusion honors the parties' expectation interests and is therefore consistent with fundamental contract principles.

8. *See also* Restatement of Contracts § 341 (1932) (allowing mental suffering compensation only where a wanton or reckless breach is of "such a character that the defendant had reason to know when the contract was made that the breach would cause mental suffering for reasons other than mere pecuniary loss").

9. Some states directly rely on this distinction between contracts of a "personal" nature and contracts of a "commercial" nature when determining the availability of mental anguish damages. *See, e.g., Kewin v. Mass. Mut. Life Ins. Co.,* 409 Mich. 401, 295 N.W.2d 50, 53–54 (1980); *Erlich v. Menezes,* 21 Cal.4th 543, 87 Cal.Rptr.2d 886, 981 P.2d 978, 987–88 (1999). We do not adopt the personal/commercial test because it is often difficult to label contracts as purely one or the other. Therefore, we focus primarily on the foreseeability of the non-economic damage.

10. Professor Whaley agrees that where "peace of mind and freedom from worry are part of the bargain, as the defendant very well knew, and if the defendant breaches these sorts of contracts, the defendant should pay for the agony suffered as an obvious consequence." Douglas J. Whaley, *Paying for the Agony: The Recovery of Emotional Distress Damages in Contract Actions,* 26 Suffolk U.L.Rev. 935, 953 (1992).

Several other states also allow the recovery of non-economic damages so long as the non-economic damages were foreseeable at the time of contracting. In Hawai'i, emotional distress damages are recoverable only if specifically provided for in the contract or if "the nature of the contract clearly indicates that such damages were within the contemplation or expectation of the parties." *Francis v. Lee Enters., Inc.*, 89 Hawai'i 234, 971 P.2d 707, 713 (1999). In New Mexico, emotional distress damages are recoverable only after a showing that "the parties contemplated damages for emotional distress at the time the contract was made." *Bourgeous v. Horizon Healthcare Corp.*, 117 N.M. 434, 872 P.2d 852, 858 (1994). And, in New Hampshire, mental suffering damages are allowable if such damages were within the contemplation of the parties or if pain and suffering were foreseeable results of the contract violation. *Guerin v. N.H. Catholic Charities, Inc.*, 120 N.H. 501, 418 A.2d 224, 227–28 (1980). Like Colorado, the above states recognize that the availability of non-economic damages is consistent with basic contract law principles so long as the foreseeability requirement is met. Thus, Colorado's willful-and-wanton rule was not erroneous when it was adopted.

Moreover, changing conditions have not rendered the willful-and-wanton rule unsound. We disagree with American Family's argument that the expansion of tort remedies over the past few decades has completely obviated the need for contractual remedies under the willful-and-wanton rule. The separate tort and contract remedies serve entirely different purposes. *See Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1262 (Colo.2000) (distinguishing the separate sources and purposes of tort and contract obligations). Under tort law, a willful-and-wanton requirement seeks to punish the wrongdoer, encourage socially responsible behavior, and compensate the aggrieved. Under contract law, however, the willful-and-wanton requirement seeks to provide the parties with the benefit of their bargain. Thus, the contractual version of the willful-and-wanton rule serves the separate and distinct purpose of providing non-economic damages where they are necessary to return the parties to the position they would have been in had the contract been performed according to the parties' expectations. Given this unique function of the willful-and-wanton rule under contract law principles, the rule has not been rendered unsound by the growing availability of tort law remedies.

Second, we decline to depart from Colorado's longstanding willful-and-wanton rule because we are not clearly convinced that such a departure would create more good than harm. The willful-and-wanton rule has existed in Colorado for ninety years, and we recently relied on the rule in *Thomas Decker II*, 931 P.2d 436. Replacing the willful-and-wanton requirement with some new rule would undoubtedly spur increased litigation and raise a number of new uncertainties. Furthermore, eliminating the rule would risk under-compensation not only in insurance cases as exemplified here, but also in employment cases, where employees terminated in a willful-and-wanton manner cannot bring a tort claim for a bad faith breach. *Id.* at 446.

In short, because Colorado's longstanding willful-and-wanton rule is sound and because a departure from the rule would produce more potential harm than overriding benefits, we decline to overturn the rule today.

### 3. The Willful–and–Wanton Rule Allows a Full Scope of Non–Economic Damages

■ Turning now to the scope of non-economic damages available for a willful-and-wanton breach, we clarify our decision in *Thomas Decker II* and hold that non-economic damages are not limited to "mental anguish" damages only. Instead, a full range of non-economic damages is available in cases involving a willful-and-wanton breach of contract.

Colorado case law supports our conclusion that the willful-and-wanton rule has always allowed the recovery of various non-economic damages in addition to "mental anguish." First, it is clear that the Colorado courts have historically used the phrase "mental distress" as an abbreviation encompassing other types of non-economic damages. As early as *Hall*, the court of appeals used the

terms "mental suffering" or "mental anguish" to collectively refer to "mental anguish, humiliation, and distress of mind." *Hall,* 24 Colo.App. at 227–28, 134 P. at 151–52. Similarly, in *McCreery,* the phrases "mental pain" and "mental suffering" served as proxies for other types of non-economic damages such as "humiliation, embarrassment, distress, and damages." 99 Colo. at 500, 64 P.2d at 804.

In more recent Colorado cases, the courts have used the terms "emotional distress" and "mental anguish" interchangeably, and this court has held that the "loss of ability to enjoy life" is equivalent to "mental suffering." *See Westfield Dev. Co. v. Rifle Inv. Assoc.,* 786 P.2d 1112, 1121 (Colo.1990); *Trimble,* 697 P.2d at 730; *Denver Publ'g Co. v. Kirk,* 729 P.2d 1004, 1008 (Colo.App.1986).

In *Thomas Decker II,* we specifically upheld an award for inconvenience and emotional stress under the general notion that "the award of ... noneconomic damages for [the defendant's] willful-and-wanton breach of its [contract] is proper under Colorado law." 931 P.2d at 448. We now clarify our interpretation of the willful-and-wanton rule to explicitly allow a complete recovery for non-economic damages caused by a willful-and-wanton breach.

In affirming a broad interpretation of the willful-and-wanton rule, we note that neither American Family nor any of the amici has offered a logical reason for limiting recovery to only some categories of non-economic damage. Their arguments depend entirely on cases that use, without explanation, the statement in *Hall* that damages are recoverable in cases seeking "mental distress alone" or "mental distress only." *See, e.g., Mortgage Fin., Inc. v. Podleski,* 742 P.2d 900, 904 (Colo.1987); *Kirk,* 729 P.2d at 1008; *Adams v. Frontier Airlines Fed. Credit Union,* 691 P.2d 352, 355 (Colo.App.1984). A lack of contextual clarification over the years has allowed courts to wrongly interpret the language "mental distress alone" to mean that other types of non-economic damages are not available. *Thomas Decker I,* 903 P.2d at 1158; *Giampapa I,* 919 P.2d at 841. This interpretation is incorrect. As explained earlier, "mental distress alone" simply refers to

cases involving mental distress damages unaccompanied by physical or pecuniary loss. *Hall,* 24 Colo.App. at 228, 134 P. at 152. The phrase does not refer to a preclusion of non-economic damages outside of mental distress.

Even if American Family had provided a sound reason for precluding other types of non-economic damages, we find it highly impractical to categorize different non-economic damages into arbitrary compartments where some damages are compensable and others are not. For purposes of determining a non-economic damage award, we simply find no principled method of separating "mental suffering" and "emotional distress" damages from those damages incurred by "physical pain" or "physical stress," because "mental anguish" is commonly evidenced by physical manifestations of that same anguish. *See, e.g., Smith v. Hoyer,* 697 P.2d 761, 764–65 (Colo.App.1984) (holding that a plaintiff's sleeplessness, loss of appetite, and diarrhea were symptomatic of his mental anguish caused by a willful-and-wanton breach of contract). Therefore, we decline to adopt a new, narrower rule which would not only prevent insureds from seeking a complete remedy for their non-economic injuries, but which would also open an endless debate over overlapping terminology. In light of these considerations, we conclude that a full range of non-economic damages, not limited to "mental anguish" damages, is recoverable in the event of a willful-and-wanton breach of contract.

## C. Application

In this section, before we apply Colorado's willful-and-wanton rule to Giampapa's case, we first determine whether the "law of the case" doctrine prevents either the court of appeals or this court from re-examining *Giampapa I.* Because we find that the rule is not binding here, we proceed to examine, in detail, the willful-and-wanton rule as applied to the jury findings and jury instructions in this case. Upon examination, we conclude that the findings and instructions in the trial record adequately support the non-economic portion of the jury's $900,000 special damages verdict in favor of Giampapa on his contract claim. Finally, because American

Family has waived the argument that the section 13–21–102.5(3)(a) statutory cap on non-economic damages applies to this case, we reinstate Giampapa's original $900,000 award in its entirety.

### 1. Law of the Case Doctrine

When a court issues final rulings in a case, the "law of the case" doctrine generally requires the court to follow its prior relevant rulings. *See People ex rel. Gallagher v. Dist. Court,* 666 P.2d 550, 553 (Colo.1983). Here, we reject American Family's contention that the law of the case doctrine requires the court of appeals to uphold its original decision in *Giampapa I* and that the doctrine precludes this court from reaching the substantive issues arising from that case.

The law of the case doctrine is merely discretionary when applied to a court's power to reconsider its own prior rulings. *See id.; People v. Dunlap,* 975 P.2d 723, 758 (Colo.1999); *People v. Roybal,* 672 P.2d 1003, 1005 n. 5 (Colo.1983) ("The doctrine of the law of the case is more flexible in its application to reconsideration by the court making the decision, because there the only purpose of the doctrine is efficiency of disposition."). Courts considering whether or not to review one of their own cases are reminded that the law of the case doctrine neither requires nor encourages courts to support erroneous judgments. *Pearson v. Dist. Court,* 924 P.2d 512, 515 (Colo.1996). Therefore, a court may decline to apply the doctrine if a previous decision is no longer sound because of changed conditions of law. *See City of Aurora v. Allen,* 885 P.2d 207, 212 (Colo.1994).

In this case, we have already discussed how the court of appeals in *Giampapa I* erroneously interpreted the scope of Colorado's willful-and-wanton rule by relying on *Thomas Decker I.* In light of our subsequent reversal of *Thomas Decker I* in *Thomas Decker II,* the court of appeals' decision regarding special damages was no longer sound when *Giampapa II* reached the court of appeals. Therefore, the court of appeals should have declined to apply the law of the case doctrine to its own prior decision, and reconsidered *Giampapa I* in accordance with the above developments.

As for the effect of the law of the case doctrine on this court, the doctrine does not bind us to the substantive decisions made by the court of appeals in *Giampapa I.* A decision of an intermediate appellate court in a prior appeal remains subject to review by a higher court even after retrial and a second round of appellate proceedings in the same case. *See Mercer v. Theriot,* 377 U.S. 152, 153–54, 84 S.Ct. 1157, 12 L.Ed.2d 206 (1964); *City of Pueblo v. Shutt Inv. Co.,* 28 Colo. 524, 530, 67 P. 162, 164 (1901). Also, our initial denial of certiorari for *Giampapa I* does not affect our ability to review the case today. The rule is clear that a denial of certiorari does not constitute judicial review on the merits. *Allison v. Indus. Claim Appeals Office,* 884 P.2d 1113, 1118 (Colo.1994); *see also Mercer,* 377 U.S. at 153, 84 S.Ct. 1157 (stating that a high court can review the judgment of an intermediate appellate court even if it denied certiorari from a previous intermediate appellate court decision). Therefore, we may reach the substantive issues arising from *Giampapa I* and we do so at this point.

### 2. Giampapa Satisfies the Willful-and-Wanton Rule

We now determine whether the original jury properly awarded Giampapa non-economic damages under his common law contract claim. In order for the jury's verdict awarding Giampapa non-economic damages to stand, the jury's findings must substantively satisfy the three elements of Colorado's willful-and-wanton rule, namely: (1) Giampapa's non-economic damages must have been the foreseeable result of a breach at the time the contract with American Family was made; (2) Giampapa's non-economic damages must be proven with reasonable certainty; and (3) the non-economic portion of Giampapa's special damages must be the natural and probable result of a willful-and-wanton breach. We will defer to the jury's verdict if the trial court properly instructed the jury on the above issues and if the record contains evidence to support its findings.

*See Stewart v. Rice,* 47 P.3d 316, 322 (Colo. 2002).

■ First, the foreseeability element is sufficiently addressed in the trial court's "special damages" instruction because it states that these damages are available only if, *"at the time the parties entered into the contract,* the defendant reasonably could have anticipated from the facts or circumstances that the defendant knew or should have known that these damages would probably be incurred by the plaintiff if the defendant breached the contract." (emphasis added). Therefore, the jury was explicitly instructed to determine whether American Family had either foreseen or should have foreseen, at the time of contracting, the non-economic damages that would result from a breach. American Family is in the business of providing personal automobile insurance coverage. The jury reasonably concluded that when American Family first sold Giampapa a "deluxe" insurance plan, American Family knew or should have known that if it failed to pay for medical equipment necessary to help Giampapa recover from an automobile accident, Giampapa would suffer mental anguish, physical pain, and impairment of quality of life.

■ Second, Giampapa's non-economic damages have been proven with reasonable certainty. We note as a preliminary matter that the rule precluding the recovery of uncertain damages "applies only to situations where the fact of damages is uncertain, not where the amount is uncertain." *Peterson v. Colo. Potato Flake & Mfg. Co.,* 164 Colo. 304, 310, 435 P.2d 237, 240 (1967) (stating also that damages generally "need not be proved with such preciseness as to permit a Jury to reach a verdict with mathematical certainty"). Any doubts regarding the certainty of non-economic damages are resolved against the party in breach, and the court may consider circumstances such as willfulness in deciding whether to require a lesser degree of certainty, giving greater discretion to the jury's findings. *See* Restatement (Second) of

Contracts, § 352 cmt. a (1981). In the present case, neither party disputes that Giampapa has in fact suffered measurable non-economic damages for physical pain, mental and emotional suffering, and impairment of quality of life. Ample evidence in the trial record, including numerous medical and psychological reports and bills, supports the jury's findings that Giampapa suffered each of the non-economic damages in question.

Third, in order for the non-economic portion of Giampapa's special damages to stand, American Family's breach must have been willful and wanton and Giampapa's non-economic damages must have been the natural and probable result of that breach. We first address the latter and more straightforward "natural and probable result" element. In the trial court's instruction explaining "special damages," the court required the jury to "find by a preponderance of the evidence that [such damages] were a natural and probable consequence of the claimed breach of the contract by the defendant." [11] Therefore, the trial court explicitly and properly instructed the jury to decide the "natural and probable result" issue when deciding whether to award Giampapa any non-economic damages. The jury then reasonably concluded that but for American Family's failure to pay for the home medical equipment, Giampapa would not have had to make the frequent, sixty-mile drive to physical therapy that contributed to his mental anguish, physical pain, and impairment of quality of life.

■ What is less apparent is whether the jury made a necessary finding of willful-and-wanton conduct under Giampapa's common law contract claim. A review of the instructions as a whole reveals that the court did not specifically tell the jury that it had to find willful-and-wanton conduct before it could award special damages under the contract claim. As discussed earlier, the common law defines a "willful-and-wanton" breach of contract as one that is "intentional, and without legal justification or excuse." *McCreery,* 99 Colo. at 503, 64 P.2d at 805.

11. At re-trial, the court further defined the "natural and probable consequence" requirement as a "but-for" inquiry into whether the defendant's breach was "an act or failure to act which in natural and probable sequence produced the claimed injury. It is a cause without which the claimed injury would not have been incurred."

The court did, however, instruct the jury on the willful-and-wanton element under the No Fault Act claim. The jury was told to consider whether the defendant's failure to pay benefits was willful-and-wanton because if it was, the court could award additional damages pursuant to the Act. The jury instruction defined "willful-and-wanton conduct" under the Act as "an act or omission purposefully committed by a person who must have realized that the conduct was dangerous, and which conduct was done heedlessly and recklessly, either without regard to the consequences, or without regard to the rights and safety of others, particularly the plaintiff." [12]

■ Although the trial court failed to give a separate instruction regarding willful-and-wanton conduct under the common law contract claim, we find that this oversight is not fatal. At trial, the American Family claims adjuster admitted that Giampapa's insurance policy provided medical equipment and that such equipment was reasonably defined as equipment used for a medical purpose. Giampapa's physician also testified that he notified American Family of his medical opinion that the home medical equipment in question was necessary to help Giampapa recover from his injuries. There was no conflicting evidence suggesting that the medical equipment was inappropriate or unnecessary. Nevertheless, American Family refused to pay for the home medical equipment. The above evidence clearly supports the jury's conclusion that American Family's failure to pay Giampapa's benefits was willful-and-wanton under the No Fault Act. Because the definition of willful-and-wanton conduct is narrower under the Act than under the common law, the jury's findings also satisfy the broader definition of willful-and-wanton conduct under Giampapa's common law contract claim.

The above jury instructions and jury findings sufficiently address and satisfy all elements of Colorado's willful-and-wanton rule; therefore, the jury acted properly by awarding Giampapa non-economic damages.

### 3. Statutory Cap Argument Waived

■ American Family now argues that even if the jury properly awarded non-economic damages, Colorado's statutory cap on non-economic damages applies to the special damages award in this case. Section 13–21–102.5(3)(a) generally limits total non-economic awards in civil suits to $250,000 with an option to raise the cap in certain circumstances to $500,000. Giampapa has already received $200,000 in non-economic damages under his tort claim.

The original jury awarded Giampapa a $900,000 lump sum for special damages, and this sum covered both his economic and non-economic special damages under his contract claim. The jury did not specify how much of the $900,000 award compensated his economic injuries of lost earnings and impairment of earning capacity, and how much of the $900,000 award compensated his non-economic injuries of mental anguish, physical pain, and impairment of quality of life. This uncertainty regarding the actual amount of non-economic damages awarded and whether the damages cap applies are matters that should have been properly raised before the original trial court.

At trial, American Family did not claim that the damages cap limited the $900,000 award. American Family did not object to the special damages instruction either before the instruction was delivered to the jury or after the jury read its verdict. Nor did American Family ever request separate instructions or ask the jury to allocate economic and non-economic damages more specifically. Furthermore, although the damages cap issue was mentioned briefly in American Family's notice of appeal, American Family did not make any arguments regarding the issue before the court of appeals in *Giampapa I*. In fact, American Family specifically conceded in both that appeal and in *Giampapa II* that it had not previously raised the non-economic damages cap issue in relation to the original $900,000 special damages award.

---

**12.** At the time of the original trial, we had not yet decided the *Dale* case, which defines "willful-and-wanton" under the No Fault Act as being "without justification or in disregard of a plaintiff's rights." 948 P.2d at 551.

We find that American Family's statements and actions constitute a waiver of the argument that the statutory cap applies to the special damages award. Therefore, we reinstate the $900,000 special damages award in its entirety.

## IV. CONCLUSION

For the foregoing reasons, we reverse the judgment of the court of appeals in *Giampapa II*, disapprove of *Giampapa I*, and remand this case to the court of appeals to return the case to the trial court for proceedings consistent with this opinion.

Justice BENDER specially concurs, and Justice KOURLIS joins in the special concurrence.

Justice COATS dissents.

Justice BENDER specially concurring.

Because the majority approves the recovery of noneconomic damages for the *willful and wanton* breach of a contract, I write separately. The majority's rule undermines the goals and purposes of contract law and conflates the important distinction between tort and contract law. I would disapprove of its future use and substitute a new rule for the recovery of noneconomic damages for a breach of contract claim. I would hold that noneconomic damages resulting from a breach of contract should be determined by a strict foreseeability test. Noneconomic damages should be available in a breach of contract suit only if the parties specifically provided for them in the contract or if the nature of the contract clearly indicated that such damages were within the contemplation or expectation of the parties. Because the rejection of the willful and wanton rule departs from our somewhat murky precedent, I would apply it prospectively only. *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 111–12 (Colo.1992). Hence, I concur in the judgment reached by the majority.[1]

To understand my reasoning, I trace the history of the willful and wanton rule and explain why the rule blurs the distinction between contract and tort. Because I ultimately reject the willful and wanton rule, I also outline a strict foreseeability test—consistent with the fundamental principles of contract law—that should replace the majority's rule in the future.

## I. The History Of Colorado's Willful and Wanton Rule Demonstrates That It Has Not Adhered To Fundamental Principles Of Contract Law

Under Colorado's willful and wanton rule, noneconomic damages arising from a breach of contract are available if the breach is willful and wanton. The majority argues that "[f]rom the beginning, the rule has adhered to basic contract law principles." *See* maj. op. at 240. Specifically, the majority claims and now holds that foreseeability has always been inherent in the rule. *Id.* at 240.

My review of our caselaw reveals opposing conclusions. Colorado's willful and wanton rule has never adhered to basic contract law principles. From its inception, this "contract rule" has relied upon tort principles.

In addition, there is only one case in which we adopted a "foreseeability approach" that would entitle injured parties to noneconomic damages following a breach of contract. *Trimble v. City & County of Denver*, 697 P.2d 716, 731 (Colo.1985). Yet even in *Trimble*, we distinguished the case because it involved a contract of a "personal nature." *Id.* at 731–32. Considering this history, the majority relies only on the Colorado Jury Instructions in support of its "inherent foreseeability requirement" and does not cite to a single Colorado case. *See* maj. op. at 240.

The uniqueness of Colorado's willful and wanton rule cannot be over-emphasized. I

1. I concur with the majority's discussion that (1) the "law of the case doctrine" is inapplicable here; (2) the Colorado Auto Accident Reparations Act (the "No Fault Act") §§ 10–4–701 to 10–4–726, 3 C.R.S. (2002) does not preempt common law contract claims; (3) the full $900,000 award stands because American Family waived its section 13–21–102.5(3)(a), 5 C.R.S. (2002) statutory cap argument; and (4) under existing precedent, recovery from a willful and wanton breach of contract is not limited to mental distress damages, and includes a full range of noneconomic damages.

note that with the possible exception of New Jersey, Colorado is the only state to permit the recovery of noneconomic damages for a willful and wanton breach of contract.[2] *See, e.g., Gaglidari v. Denny's Rests, Inc.,* 117 Wash.2d 426, 815 P.2d 1362, 1370 (1991) (discussing, in the context of the breach of an employment contract, the uniqueness of Colorado's willful and wanton rule); *Buckley v. Trenton Sav. Fund Soc'y,* 216 N.J.Super. 705, 524 A.2d 886, 891 (1987).

To appreciate why the willful and wanton rule is more consistent with the principles of tort law, I briefly describe the cases which explain, or attempt to explain, the origins of the rule.

The first case where a Colorado court considered the willful and wanton rule was *Hall v. Jackson,* 24 Colo.App. 225, 134 P. 151 (1913). The *Hall* defendant was an undertaker who had prepared the plaintiff's husband's body for burial. The plaintiff, seeking damages for mental anguish, brought suit because the defendant breached the contract by failing to properly embalm the decedent. *Id.* at 226–27, 134 P. at 151–52. The court of appeals ruled that a plaintiff can recover for mental suffering resulting from a breach of contract if the breach was accompanied by "willful, insulting or wanton conduct." *Id.* at 228, 134 P. at 152. It reached this conclusion by importing a patchwork of principles mentioned in various cases by courts around the country, mostly involving tort claims and special contract situations.

The *Hall* court began its analysis by noting that, at common law, mental distress damages were unavailable unless they accompanied physical injury. *Id.* at 229, 134 P. at 152. The court recognized that some jurisdictions had moved away from the common law rule in the context of willful or intentional torts, such as malicious prosecution, slan-

---

**2.** A few states may require that the breach be willful and wanton, but this is usually coupled with other requirements, such as that the plaintiff suffer a bodily injury. *See, e.g.,* Restatement (First) of Contracts § 341 (1932).

Other states have taken a variety of other approaches to the question of when noneconomic damages are available in contract suits. *See generally* John A. Sebert, Jr., *Punitive and Nonpecuniary Damages in Actions Based Upon Contract: Toward Achieving the Objective of Full Compensation,* 33 UCLA L.Rev. 1565, 1584–1600 (1986); David Tartaglio, *The Expectation of Peace of Mind: A Basis for Recovery of Damages for Mental Suffering Resulting from the Breach of First Party Insurance Contracts,* 56 S. Cal. L.Rev. 1345, 1353–59 (1983); Joseph P. Tomain, *Contract Compensation in Nonmarket Transactions,* 46 U. Pitt. L.Rev. 867, 888–912 (1985). Several states maintain the rule that generally no damages may be recovered for mental or emotional distress resulting from a breach of contract. *See, e.g., Brown v. Matthews Mortuary, Inc.,* 118 Idaho 830, 801 P.2d 37, 45–46 (1990); *County of Milwaukee v. Schmidt, Garden & Erikson,* 43 Wis.2d 445, 168 N.W.2d 559, 563 (1969). Some states have adopted the rule, usually in conjunction with other exceptions, that emotional and mental suffering damages are available for a breach of contract if they accompany physical injury, a tort-like situation that I do not specifically address here. *See, e.g.,* Mont.Code Ann. § 27–1–310 (2002); *E.I. DuPont de Nemours & Co. v. Pressman,* 679 A.2d 436, 444–45 (Del. 1996); *Clark v. Life & Cas. Ins. Co.,* 245 Ky. 579, 53 S.W.2d 968, 970 (1932); *Keltner v. Wash. County,* 310 Or. 499, 800 P.2d 752, 755–56 (1990). A few states require that a breach of

contract must also constitute an independent intentional tort before noneconomic damages are permitted. *See, e.g., Lickteig v. Alderson, Ondov, Leonard & Sween,* 556 N.W.2d 557, 561 (Minn. 1996); *Braesch v. Union Ins. Co.,* 237 Neb. 44, 464 N.W.2d 769, 778 (1991) *overruled in part on other grounds by Wortman v. Unger,* 254 Neb. 544, 578 N.W.2d 413, 417 (1998). Some jurisdictions have carved out specific exceptions to the rule of no mental distress damages in contract cases, in response to particularly compelling facts. For instance, emotional distress damages have been awarded for breaches of marriage contracts or funeral contracts or when telegraph companies failed to deliver important messages. *See, e.g., Russ v. Western Union Tel. Co.,* 222 N.C. 504, 23 S.E.2d 681, 682 (1943); *Waddell v. Wallace,* 32 Okla. 140, 121 P. 245, 247 (1911).

A related approach adopted by several jurisdictions is to permit mental distress damages when the contract breached is of a "personal" nature, but not if it is of a "commercial" nature. *See, e.g., Kewin v. Mass. Mut. Life Ins. Co.,* 409 Mich. 401, 295 N.W.2d 50, 53–54 (1980); *Selsnick v. Horton,* 96 Nev. 944, 620 P.2d 1256, 1257 (1980). Other states have taken essentially the same approach, but named the categories slightly differently. *See, e.g.,* La. Civ.Code Ann. art.1998 (2002) (distinguishing between contracts that gratify "pecuniary" interests and those that gratify "non-pecuniary" interests); *Erlich v. Menezes,* 21 Cal.4th 543, 87 Cal.Rptr.2d 886, 981 P.2d 978, 987–88 (1999) (distinguishing between "the ordinary commercial contract" and contracts whose "express object ... is the mental and emotional well-being of one of the contracting parties.").

der, libel, and seduction. *Id.* at 229–31, 134 P. at 152–53 (discussing *Carter v. Oster*, 134 Mo.App. 146, 112 S.W. 995 (1908); *Summerfield v. W.U.T. Co.*, 87 Wis. 1, 57 N.W. 973 (1894)).

Turning to contract cases, the court discussed a Colorado case involving a willful breach of a contract of carriage. *Hall*, 24 Colo.App. at 234, 134 P. at 154 (citing *Bleecker v. C. & S. Ry. Co.*, 50 Colo. 140, 114 P. 481 (1911)). In that context, mental distress damages were permitted because of the special "tort duty" owed by a common carrier. *Hall*, 24 Colo.App. at 234–35, 134 P. at 154. The *Hall* court also discussed a Minnesota case involving a funeral contract similar to that present in *Hall. Id.* at 232–34, 134 P. at 153–54 (discussing *Beaulieu v. Great Northern Ry. Co.*, 103 Minn. 47, 114 N.W. 353 (1907)). In Minnesota, at the time of the *Beaulieu* decision, mental anguish damages were available in contract if the breach of contract also constituted an "independent willful tort." *Hall*, 24 Colo.App. at 233, 134 P. at 154.

Lacking guidance from this court and the legislature as to when mental distress damages should be available in contract cases, the court of appeals in *Hall* relied on these and similar cases to support the rule it created. *Id.* at 237–38, 134 P. at 155. The court of appeals held that mental distress damages alone, meaning mental distress damages unaccompanied by other sorts of physical or pecuniary loss, are available whenever a promisor's conduct in breaching the contract is willful, insulting, or wanton. *Id.* at 228, 134 P. at 152. The *Hall* court did not at any point discuss the implications of the rule that it created, nor did it define "willful" or "wanton."

The first Colorado Supreme Court case to consider the issue of mental suffering damages in a contract case was *Westesen v. Olathe State Bank*, 78 Colo. 217, 240 P. 689 (1925). The defendant, a bank, agreed to loan the plaintiff money for a trip to California. The defendant breached the contract

and the plaintiff brought suit. *Id.* at 218, 240 P. at 690. The court mentioned with favor the rule of *Hall*, that mental suffering damages were available for a willful and wanton breach of contract. *Id.* at 218–19, 240 P. at 690. However, it distinguished the facts of *Westesen* from those in *Hall* because the breach of contract in *Westesen* caused both pecuniary damages and mental distress damages, instead of mental distress damages alone. *Id.* at 219, 240 P. at 690. The court held that when mental distress damages are accompanied by other sorts of damages, such as pecuniary damages, they may be recovered so long as they are the "natural and proximate result of the breach," regardless of whether the breach was willful.[3] *Id.*

In a case involving facts similar to *Hall*, the Colorado Supreme Court approved use of the willful and wanton rule. *Fitzsimmons v. Olinger Mortuary Ass'n*, 91 Colo. 544, 550, 17 P.2d 535, 537 (1932). The court states that this rule is "in line with the distinction, approved by numerous authorities, between breaches of contract involving 'simple negligence' or 'ordinary negligence' and those accompanied by 'willful, wanton or insulting' conduct." *Id.* at 550, 17 P.2d at 537 (citations omitted). The court provides no further explanation or discussion.

A few years later, this court again discussed the availability of mental distress damages in contract cases, at last providing some minimal definition of "willful and wanton." *McCreery v. Miller's Groceteria Co.*, 99 Colo. 499, 503, 64 P.2d 803, 805 (1936). The *McCreery* court affirmed the rule of *Hall* and stated that a willful and wanton breach is not "a mere passive breach, but . . . [is] intentional, and without any legal justification or excuse." *Id.*

Following *McCreery*, Colorado courts did not discuss the availability of noneconomic damages in contract cases until the 1980s. *See, e.g., Trimble*, 697 P.2d at 731; *Kimelman v. City of Colo. Springs*, 775 P.2d 51, 53 (Colo.App.1988). In *Trimble*, we stated that such damages are recoverable if a contract is

---

3. The portion of the *Westesen* holding that permitted noneconomic damages whenever economic damages were present, subject to traditional foreseeability and causation requirements, was

specifically rejected by the court of appeals. *Adams v. Frontier Airlines Fed. Credit Union*, 691 P.2d 352, 355 (Colo.App.1984).

of a personal nature such that the parties knew or should have known that a breach of the contract would cause noneconomic damages. *Trimble*, 697 P.2d at 731. This foreseeability approach represented a departure from precedent both because no previous case had focused on the personal nature of the contract and because no previous case had explicitly imposed a foreseeability requirement in conjunction with the willful and wanton rule. However, almost no cases have considered or applied the foreseeability rule announced in *Trimble*. *But see Kimelman*, 775 P.2d at 53 (refusing to apply the personal contract exception to a funeral contract because both *Hall* and *Fitzsimmons* had required willful and wanton conduct in the context of funeral contracts). Since that time, our courts have recited the willful and wanton rule without significant discussion.[4]

In sum, Colorado's caselaw demonstrates that permitting the recovery for noneconomic damages resulting from a willful and wanton breach of a contract has always been rooted in the law of tort and not the law of contract. In connection with the development of this rule, the concept of foreseeable noneconomic damages has played no significant role.

## II. The Willful And Wanton Rule Blurs The Distinction Between Contract And Tort

In an attempt to cure the basic contract law deficiencies of the willful and wanton rule, the majority explicitly includes a "foreseeability element." *See* maj. op at 243. For plaintiffs to recover under the majority's rule, noneconomic damages must have been the foreseeable result of a breach at the time the contract with defendant was made. *Id.* However, by retaining the "willful and wanton" element, the majority fails to cure the rule's deficiencies. The rule still focuses on the conduct of the defendant at the time of the breach, thereby blurring the distinction between contract and tort. As background to support a full discussion of how I reach these conclusions, I review first some general principles of contract and tort law damages.

The purpose of contract damages is neither to compel performance nor to punish the breaching party. Rather, contract damages compensate the promisee for any loss resulting from breach. *See, e.g., Mortgage Fin., Inc.*, 742 P.2d at 902. Therefore, under contract law, the aggrieved party is awarded damages that put her in a position as close as possible to that position she would have experienced with full performance of the contract (the "expectancy" position). *See, e.g., Town of Alma v. AZCO Constr. Inc.*, 10 P.3d 1256, 1262 (Colo.2000)("Contract law is intended to enforce the expectancy interests created by the parties' promises so that they can allocate risks and costs during their bargaining."); *Taylor v. Colorado State Bank*, 165 Colo. 576, 580, 440 P.2d 772, 774 (1968); 3 E. Allan Farnsworth, *Farnsworth on Contracts* § 12.1 (2d ed.1998).

Such expectancy damages have some limits. One such limitation has its roots in the mutual assent reached by the parties when they agree to a contract. The aggrieved party can recover only those damages that were the foreseeable result of a breach at the time the contract was made, and those damages that can be proven with reasonable certainty. *See, e.g.*, Restatement (Second) of Contracts §§ 351 & 352 (1981). The foreseeability limitation exists because parties to a contract voluntarily assume liability. By definition, a contract means that parties mutually reached and agreed to specified terms and obligations. Courts are reluctant, therefore, to impose greater liability than contemplated by the parties at the time the contract was made. *See, e.g.*, John A. Sebert, Jr., *Punitive and Nonpecuniary Damages in Actions Based Upon Contract: Toward Achieving the Objective of Full Compensation*, 33 UCLA L.Rev. 1565, 1567 (1986) (stating that "damage rules recognize the consensual basis of contract liability by limiting a contracting party's potential liability to those risks that

---

4. *See, e.g., Westfield Dev. Co. v. Rifle Inv. Assoc.*, 786 P.2d 1112, 1121 (Colo.1990); *Mortgage Fin., Inc. v. Podleski*, 742 P.2d 900, 904 (Colo.1987); *Van Steenhouse v. Jacor Broad. of Colo., Inc.*, 935 P.2d 49, 54 (Colo.App.1996) *rev'd in part on other grounds* 958 P.2d 464 (Colo.1998); *Allabashi v. Lincoln Nat'l Sales Corp. of Colo.-Wyo.*, 824 P.2d 1, 4 (Colo.App.1991); *Kimelman*, 775 P.2d at 53; *Hoffsetz v. Jefferson County Sch. Dist.*, 757 P.2d 155, 158 (Colo.App.1988); *Rederscheid v. Comprecare, Inc.*, 667 P.2d 766, 767 (Colo.App. 1983).

might reasonably be deemed to have been assumed upon entering the contract").

Another such limit to expectancy damages is the common law principle that victims of a breach of contract typically were not entitled to noneconomic damages, such as emotional distress and mental suffering. Farnsworth, *Farnsworth on Contracts* § 12.17. Different rationales have been advanced to explain this limitation. Some courts and commentators suggest that such nonpecuniary damages are not generally foreseeable.[5] Others point out that measurement of such damages is too uncertain to be permitted.[6] Others say that this rule exists to prevent a windfall to the promisee or to further other policy goals.[7] Whatever the rationale, the reality is that developments in many jurisdictions have made emotional distress and other noneconomic damages available in some circumstances, as discussed below.

Contrary to contract purposes, tort law addresses different purposes. *See, e.g., Town of Alma*, 10 P.3d at 1262; *Decker v. Browning–Ferris Industries of Colorado, Inc.*, 931 P.2d 436, 446 (Colo.1997) [hereinafter *"Thomas Decker II"*]. Tort law enforces duties imposed by law, instead of those created by contract. *Id.* As such, tort law often attempts to encourage socially beneficial types of behavior and to deter wrongful conduct. *See, e.g.*, Restatement (Second) of Torts § 901(c) (1979). Accordingly, liability under tort law is typically premised on some sort of culpable conduct. *See, e.g., id.;*

Douglas J. Whaley, *Paying for the Agony: The Recovery of Emotional Distress Damages in Contract Actions*, 26 Suffolk U.L.Rev. 935, 949 (1992) ("Tort law focuses on the *fault* of the tortfeasor, an element almost foreign to contract analysis. Contract looks to the *fact* of breach and ... does not weigh the culpability of the breacher in granting relief."). As we have recently stated, "Liability not only recompenses the wronged plaintiff, but also deters the socially wrongful conduct in the first place. Hence, clarity and certainty of tort law serves a very important function in regulating how we deal with one another." *Denver Publ'g Co. v. Bueno*, 54 P.3d 893, 898 (Colo.2002).

Because the law of torts and the law of contracts reflect different policies, each body of law recognizes different remedies. *Thomas Decker II*, 931 P.2d at 446. Instead of the expectancy interest awarded to the promisee for a breach of contract, a prevailing tort claimant is compensated for all damages proximately caused by the tortious behavior of the tortfeasor. Restatement (Second) of Torts § 901 cmt. a ("[T]he law of torts attempts primarily to put an injured person in a position as nearly as possible equivalent to his position prior to the tort."). As a result, a more extensive range of damages is often available under tort law than under contract law.

The differences between the goals of tort and contract explain the differences between the damages recoverable under each.[8] Un-

5. *See, e.g.*, John D. Calamari & Joseph M. Perillo, *The Law of Contracts* § 14–5(b) (3rd ed.1987) (and cases cited therein); Linda Curtis, *Damage Measurements for Bad Faith Breach of Contract: An Economic Analysis*, 39 Stan. L.Rev. 161, 165 (1986) ("The argument rests on a model of a contract as an arm's length commercial transaction, in which emotional distress is generally not within the contemplation of the parties.").

6. *See, e.g.*, Sebert, 33 UCLA L.Rev. at 1587–88 (and cases cited therein).

7. *See, e.g.*, Farnsworth, *Farnsworth on Contracts* § 12.17 ("A limitation more firmly rooted in tradition is that generally denying recovery for emotional disturbance, or 'mental distress,' resulting from breach of contract, even if the limitations of unforeseeability and uncertainty can be overcome. It could be argued that the real basis of this rule is that such recovery is likely to result in

disproportionate compensation."); Calamari & Perillo, *Law of Contracts* § 14–5(b).

8. Even the use of the phrases "general damages" and "special damages" differs somewhat confusingly under tort and contract. Like in contract, general damages in tort are those that flow naturally from the defendant's conduct and special damages in tort are those damages that are particular to a specific plaintiff. 1 Marilyn Minzer et al., *Damages in Tort Actions* § 3.03[1] (1992). However, under tort law, many types of noneconomic injuries are considered to flow naturally from a tort. *Id.; see also Lira v. Shelter Ins. Co.*, 903 P.2d 1147, 1150 (Colo.App.1994), *aff'd* 913 P.2d 514 (Colo.1996) (stating that general damages in tort include, among other types of loss, mental distress and worsening of physical condition). In contrast, noneconomic damages in contract are rarely discussed as general damages; general damages are unquestioningly re-

der tort law, liability is typically premised upon the defendant's wrongful conduct. In contrast, in contract, breach is not always thought to be a morally reprehensible action. Farnsworth, *Farnsworth on Contracts* § 12.1 ("[A]long with the celebrated freedom to make contracts goes a considerable freedom to break them as well.").[9]

There are even occasions where a breach of contract is thought to be economically and socially beneficial. The theory of "efficient breach" posits that the purpose of contract law is not to discourage all breaches. To the contrary, certain breaches, such as those where the breaching party's gains exceed the injured party's losses, are thought to be desirable. When such a situation arises, the measure of damages under contract law—the expectancy interest—provides an incentive to encourage the breach. *See, e.g.,* Richard A. Posner, *Economic Analysis of the Law* (4th ed.1992); Farnsworth, *Farnsworth on Contracts* § 12.3.

Our recent caselaw reflects these differing purposes of contract and tort and recognizes the need to separate the boundaries of these two bodies of law. *Town of Alma,* 10 P.3d at 1262–63. In *Town of Alma,* this court recognized that not all breaches of contract create tort liability. We held that the source of the duty under which the claimant sues determines whether a particular action sounds in contract or tort. *Id.* at 1262. If the source of the duty were found only in contract, and the damage resulting from the breach were wholly economic, then the claimant could not sue in tort. *Id.* at 1264. Tort claims could be brought only if the defendant violated a duty imposed by law. *Id.* at 1263–64. Our decision was motivated by the concern that the law of torts could swallow the law of contracts if every breach of contract were actionable in tort. *Id.* at 1260. The willful and wanton rule of noneconomic damages in contract cases presents analogous concerns.

As noted, traditional contract damages are based upon the expectations of the party at the time the contract is formed. The majority's rule, permitting recovery of noneconomic damages for willful and wanton breaches, punishes a person who intentionally breaches more severely than it does one who only negligently breaches a contract. By focusing upon the type of breach, the majority's rule risks under-compensating an injured promisee under a contract. Even if noneconomic damages are clearly foreseeable and can be proven with reasonable certainty, the majority would deny these damages from an injured party if the breach is unintentional or merely negligent. Such an approach fails to provide injured parties with the "benefit of their bargain." *See* maj. op. at 241. Instead of adhering to traditional contract principles, the willful and wanton rule depends upon particular conduct deemed wrongful by law. Usually, wrongful conduct forms the basis of liability only in tort law.

Using a standard of culpability such as willfulness to determine liability in a contract case undermines the doctrine of efficient

---

ferred to in economic terms. *See, e.g.,* 3 Dan B. Dobbs, *Law of Remedies* § 12.2(3)(2d ed.1993)(discussing market-based ways of measuring general economic damages); Douglas J. Whaley, *Paying for the Agony: The Recovery of Emotional Distress Damages in Contract Actions,* 26 Suffolk U.L.Rev. 935, 955 (1992) ("Emotional distress recovery is a form of consequential damages."). A commentator aptly summarized the confusing state of the law, pointing out that:

One notes some irony here: special damages in torts are more certainly calculated, in contracts they are less certain (consequentials are contract special damages); general damages in torts are less certain, in contracts they are more certain (formulas are contract general damages). Thus, special damages in torts are like general damages in contracts and general damages in torts are analogous to special damages in contracts.

Thomas C. Galligan, Jr., *Contortions Along the Boundary Between Contracts and Torts,* 69 Tul. L.Rev. 457, 470 (1994).

9. Farnsworth also states:

No matter how reprehensible the breach, damages are generally limited to those required to compensate the injured party for lost expectation, for it is a fundamental tenet of the law of contract remedies that an injured party should not be put in a better position than had the contract been performed. As Holmes said, "If a contract is broken the measure of damages generally is the same, whatever the cause of the breach." ... [C]ontract law is, in its essential design, a law of strict liability, and the accompanying system of remedies operates without regard to fault.

Farnsworth, *Farnsworth on Contracts* § 12.8 (footnotes omitted).

breach. In contract, parties are supposed to be allowed to weigh the costs of performance against the costs of breach. The costs of breach are generally calculated by considering the expectations of the parties at the time of contract. If the breaching party's gains exceed the injured party's losses, then the breach is thought to be desirable. However, the willful and wanton rule discourages a party from engaging in such a balancing test because it punishes intentional breaches.

The majority holds that noneconomic damages are available provided that the damages are a natural and probable result of a willful and wanton breach. *See* maj. op. at 234, 238. By so holding, the majority perpetuates a rule that creates a particular type of tort liability in the context of traditional contract liability. Noneconomic damages are available only if particular conduct occurs that is deemed wrongful. Thus, Colorado law imposes a tort duty to discourage contracting parties from intentionally breaching their contract. This rule in turn effectively elevates a breach of contract claim into an actionable tort claim. Such an approach undermines the goals and basic principles of contract law and unacceptably blurs the distinction between contract and tort.

This conflation of principles can be demonstrated by the majority's articulation of its own rule, particularly with respect to foreseeability. The majority holds that a plaintiff can recover for noneconomic damages under the willful and wanton rule if such damages are a "foreseeable result of a breach at the time the contract was made." *See* maj. op. at 240 citing to the Restatement (Second) of Contracts, §§ 351 & 352). As mentioned earlier, the majority also holds that such damages are recoverable so long as the damages are a "natural and probable result of the breach." *See* maj. op. at 234, 238. I find this articulation indistinguishable from a "natural and proximate result of the breach," which is the wording used and found in one of our original willful and wanton cases. *See Westesen*, 78 Colo. at 219, 240 P. at 690. The majority's two statements of foreseeability are not necessarily the same. As the Restatement tells us, foreseeability under contract law is a more severe limita-

tion of liability than is the requirement of "proximate cause"—an element that is normally found in a tort action. *See* Restatement (Second) of Contracts § 351 cmt. a. The Restatement explains that in contract, the recovery that is precluded by the limitation of foreseeability is usually based on the expectation interest—i.e. lost profits—but the limitation may also preclude recovery based on the reliance interest. *Id.* Thus, even the majority's reaffirmation of the willful and wanton rule fails to address the conflation between the law of contract and the law of tort inherent in the rule.

While I adhere fully to the principles of stare decisis and the policies that this important doctrine serves, I am convinced that our current rule of noneconomic damages in contract cases should be set aside. *See People v. Blehm*, 983 P.2d 779, 788 (Colo.1999)("[A] court will follow the rule of law it has established in earlier cases, unless clearly convinced that the rule was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come from departing from precedent."). Sound reason exists in this case to depart from the rule that permits recovery of noneconomic damages for a willful and wanton breach of contract. The rule, unsound at its inception, has become no more sound with the passage of time. *See Evans v. Bd. of County Comm'rs*, 174 Colo. 97, 104, 482 P.2d 968, 972 (1971) ("We think that the [two cases that created the rule that the court considered] were wrong when announced and they are wrong today; repetition of them forty times or four hundred times doesn't make good law or cause the reasons for the doctrines to become any stronger."). Hence, I would disapprove of the willful and wanton rule and overrule *Hall* and the line of cases that follow it.

### III. A New Contract Rule of Strict Foreseeability for the Recovery of Noneconomic Damages

Having concluded that the Colorado willful and wanton rule should be abandoned, I consider what rule should be implemented in its place. As discussed, the expectations of the parties at the time of contracting usually

determine the damages that are available upon a breach, so that contractual risk can be confidently allocated.

The majority argues that "some new rule" would cause more harm than good because it undoubtedly would spur increased litigation and raise a number of uncertainties. *See* maj. op. at 241. Other courts and commentators are suspicious that using a foreseeability standard to determine the availability of noneconomic damages will "risk runaway jury verdicts, inhibit commercial transactions, and increase uncertainty for contracting parties." *See, e.g.,* Michael Dorff, *Attaching Tort Claims to Contract Actions: An Economic Analysis of Contort,* 28 Seton Hall L.Rev. 390, 403 (1997). These authorities fear that literal application of the foreseeability rule would mean that emotional distress damages would be recoverable in almost every breach of contract suit. *Gaglidari,* 815 P.2d at 1373.

Recognizing these concerns, I would adopt a rule of strict foreseeability, following the approach of the Hawai'i Supreme Court. *Francis v. Lee Enter. Inc.,* 89 Hawai'i 234, 971 P.2d 707 (1999). Before *Francis,* Hawai'i's rule was that "where a contract is breached in a wanton or reckless manner [so] as to result in a tortious injury, the aggrieved person is entitled to recover in tort." *Dold v. Outrigger Hotel,* 54 Haw. 18, 501 P.2d 368, 372 (1972). Thus, Hawai'i had adopted an approach very similar to Colorado's, with the exception that it acknowledged that it was imposing a tort standard onto contract law— an acknowledgement that the majority fails to make today.

Though the *Francis* court recognized the importance of stare decisis, it ultimately concluded that the *Dold* rule on willful or reckless breaches of contract "unnecessarily blurs the distinction between—and undermines the discrete theories of recovery relevant to— tort and contract law." *Francis,* 971 P.2d at 712. Therefore, it discarded the rule and replaced it with a rule that was consistent with contract principles.[10] The court noted that the nature of some contracts is such that emotional distress is a particularly foresee-

able result. *Id.* at 713. In such circumstances, emotional distress and other sorts of noneconomic damages would be available to the injured promisee:

> [I]n deciding whether such [emotional distress] damages are recoverable, we shift the focus of the inquiry away from the manner of the breach and to the nature of the contract. Thus, damages for emotional distress may be recoverable, but only where the parties specifically provide for them in the contract or where the nature of the contract clearly indicates that such damages are within the contemplation or expectation of the parties.

*Id.* (emphasis removed).

I agree with the analysis of the Hawai'i Supreme Court. I would hold that noneconomic damages are available in breach of contract suits only where the parties specifically provide for them in the contract or where the nature of the contract clearly indicates that such damages are within the contemplation or expectation of the parties.

Replacing the willful and wanton rule with a rule of strict foreseeability does not risk under-compensating plaintiffs in employment cases. *See* maj. op. at 241. Neither rule changes our holding in *Thomas Decker II* that employees terminated in a willful and wanton manner cannot bring a tort claim for bad faith breach. 931 P.2d at 446. However, a rule of strict foreseeability, as I propose, would provide all plaintiffs with compensation for noneconomic damages in contract cases whenever the contract provides for them or where the nature of the contract clearly indicates that such damages are within the contemplation or expectation of the parties. Unlike the willful and wanton rule, Hawai'i's rule is not dependent upon the tortious nature of the breach.

I note that a strict foreseeability test is consistent with the growing trend towards permitting the recovery of noneconomic damages when such damages are contemplated by the parties at the time of contracting. Recently, several jurisdictions besides Hawai'i have chosen to apply foreseeability prin-

---

**10.** The *Francis* court did not alter the rule that a breach of contract that results in physical injury may be actionable in tort, an issue that I do not address. *Francis,* 971 P.2d at 713.

ciples when determining what damages an aggrieved party may recover. *See, e.g., Guerin v. N.H. Catholic Charities, Inc.,* 120 N.H. 501, 418 A.2d 224, 227 (1980) (permitting recovery of mental distress damages for a breach of contract in the exceptional situation where such damages were "within the contemplation of the parties"); *Bourgeous v. Horizon Healthcare Corp.,* 117 N.M. 434, 872 P.2d 852, 858 (1994) (requiring the plaintiff to make a showing that mental distress damages were contemplated by the parties).[11]

While the rejection of the willful and wanton rule might not have been foreshadowed, there is some support in our precedent for the strict foreseeability rule that I propose today. In *Trimble,* we held that mental distress damages are available if they were foreseeable at the time of contracting and they were caused by the breach of a "personal" contract, which is a similar, though not identical, approach to that which I would adopt today. 697 P.2d at 731–32.

In following the lead of the *Francis* court, I would not undermine the ability of parties to allocate with confidence contractual risk or the predictability of contract damages generally.[12] In the typical contract, parties do not contemplate noneconomic damages. A rule permitting such damages in the unusual case is unlikely to impact the great majority of all contracts. Such a rule supports and conforms to the values that contract law intends

to foster. Where parties enter into contracts to insure peace of mind and mental security, and where breach of those contracts results in very real and provable noneconomic injury, contract law must compensate for that sort of injury.

## IV. CONCLUSION

For the reasons stated above, I specially concur with the judgment of the majority.

I am authorized to say that Justice KOURLIS joins in this special concurrence.

Justice COATS, dissenting.

While I agree that our prior pronouncements sanctioning recovery for mental anguish caused by a willful and wanton breach of contract literally cry out for explanation and reconciliation, I do not agree that the issue is before us in this case. It seems clear, at least to me, that the legislature has already specified the precise recovery for a willful and wanton failure to pay no-fault auto insurance benefits when they are due. Because I disagree with the majority's proliferation of recoveries for the same injuries and conduct generally, and with its allowance of more than a treble-damage recovery for willful and wanton breach of a no-fault insurance contract specifically, I respectfully dissent.

---

**11.** The majority relies on *Guerin, Bourgeous* and *Francis* to argue that Colorado, like these states, recognizes that the availability of noneconomic damages is consistent with basic contract law principles. *See* maj. op. at 240–241. The majority's reliance on these cases is misplaced on two grounds. First, none of these states requires a plaintiff to prove the breach was willful and wanton to recover for noneconomic damages in a contract case. As mentioned above, the Hawai'i Supreme Court in *Francis* specifically rejected a rule similar to Colorado's willful and wanton rule because it was not consistent with basic contract law. 971 P.2d at 712. Second, the foreseeability tests of these courts in the context of noneconomic damages are stricter than those applied in other contexts, such as for ordinary pecuniary loss. *See, e.g., Bourgeous,* 872 P.2d at 858 (requiring the plaintiff to make a showing that mental distress damages were contemplated, thus implying that a reasonable person standard will not be used).

**12.** Professor Whaley, who argues in favor of applying ordinary foreseeability principles to the recovery of noneconomic damages, summarizes this idea well:

Using a simple *Hadley [v. Baxendale,* 9 Ex. 341, 156 Eng. Rep. 145 (1854)] test for the recovery of emotional distress damages is not likely to lead to a large expansion of liability. Most contract breaches do not cause legally significant amounts of mental anguish. But for the sort of contracts where human emotions are very much at issue[, where] peace of mind and freedom from worry are part of the bargain, as the defendant very well knew, and if the defendant breaches these sorts of contracts, the defendant should pay for the agony suffered as an obvious consequence. There is no surprise here; the issue of foreseeability takes care of that. Nor is this rule unfair to the defendant. If the defendant is going to traffic in the kind of contract that risks emotional distress when breached, let the defendant bear that risk.

Whaley, 26 Suffolk U.L.Rev. at 953.

As part of the "Colorado Auto Accident Reparations Act," the General Assembly has required every owner of a motor vehicle who operates or knowingly permits its operation on the public highways of this state to have in effect a complying insurance policy, including basic personal injury protection coverages as mandated by statute. *See* §§ 10–4–705, –706, 3 C.R.S. (2002). The failure of a motor vehicle owner to enter into and maintain such an insurance policy can result in criminal sanctions. In the event that an insurer fails to pay the benefits required under such an insurance contract when they are due, the person entitled to such benefits is provided, by statute, an action in contract to recover them. *See* § 10–4–708(1), 3 C.R.S. (2002). The General Assembly has further specifically provided that "in the event of willful and wanton failure of the insurer to pay such benefits when due, the insurer shall pay to the insured ... an amount which is three times the amount of unpaid benefits recovered in the proceeding." § 10–4–708(1.8).

By the slimmest of margins, this court previously held that section 10–4–708 does not abrogate the common law remedy for *tortious* bad faith breach of an insurance contract. *Farmers Group, Inc. v. Williams,* 805 P.2d 419, 424–26 (Colo.1991). Relying heavily on the special duty of good faith and fair dealing created by the very nature of an insurance contract, and the distinction between a contract claim and "a tort action for bad faith breach of an insurance contract," *id.* at 424, we found that legislative provision of a specific contract remedy was, in itself, insufficient to demonstrate an intent to limit recovery for common-law tort claims like bad faith breach. Whatever the wisdom of that holding at the time, it has not been disturbed by the General Assembly in the ensuing twelve years. Nothing in *Williams,* however, suggests its extension to breach of contract claims for willful and wanton failure to pay PIP benefits—precisely the breach of contract claim for which the legislature has specified a remedy of three times the amount of unpaid benefits. Whether or not the statute evinces a sufficient intent to abrogate all other remedies, by characterizing the failure to pay PIP benefits when due as a breach of

contract and specifying the remedy for a willful and wanton failure to pay, the plain language of the statute mandates the precise amount to be recovered from an insurer for breaching a no-fault automobile insurance contract by willfully and wantonly failing to pay benefits.

Neither, in my view, does this plain reading "frustrate the essential purpose of the No Fault Act." *See* maj. op. at 238. The plaintiff in this case sought recovery on multiple theories and won jury verdicts including $900,000 for willful and wanton breach of the insurance contract; $300,000 for the tort of breaching the contract in bad faith and an additional $300,000 in punitive damages for doing so; and treble damages for breach under the No–Fault Act. In what can only be described as a *tour de force,* the majority (in sharp contrast to the special concurrence) not only finds a meaningful distinction between recovery in contract for willful and wanton breach and recovery in tort for bad faith breach, allowing separate recoveries for both, but also "clarifies" our prior holdings recognizing a willful and wanton breach of contract claim for mental anguish by expanding that cause of action to permit recovery for a "complete range of non-economic damages." *See* maj. op. at 234. On top of all this, the majority attributes to the legislature an intent to accomplish its purpose of " 'avoid[ing] inadequate compensation to victims of automobile accidents'," maj. op. at 238 (quoting from section 10–4–702, 3 C.R.S. (2002)), by providing an *additional* treble damages award for willful and wanton breach. It seems to me more likely that this statement of legislative purpose refers to its treatment of fault as a consideration in auto accident cases, and that by providing a treble-damage award for a willful and wanton failure to pay no-fault insurance benefits when due, the legislature considered itself to be dictating the proper remedy for this behavior.

While everyone surely must feel sympathy for the plight of accident victims like the plaintiff, I can find no legal justification for affirming a $900,000, willful and wanton breach of contract award by expanding an already questionable theory of recovery and

avoiding a legislatively imposed damage-cap by dubbing it waived, as the majority does; or by legislating a new rule for future cases only, rather than resolving an actual case or controversy, as the special concurrence would do. Because I consider the extent of recovery for willful and wanton failure to pay no-fault insurance benefits a policy prerogative of the General Assembly, which I believe it has exercised, I respectfully dissent.